Good morning, your honors. Bo Sterling on behalf of the appellants. We're asking that the district court's summary judgment ruling be reversed and in this manner sent back to the district court. The substantive issue relates to the district court's ruling that plaintiffs' experts were unreliable and unscientific. Could I stop you for a moment, because I sort of struggled with the standard of review. Because Joyner says, the Supreme Court in Joyner says, that even, and we said in Kennedy v. College and Corp., even in the context of a summary judgment motion, we review the district court's decision to exclude expert scientific testimony for abuse of discretion. So although we have, the order we have before us is a summary judgment, grant of summary judgment, with respect to the district court's exclusion of Mr. Hoffman's testimony, aren't we reviewing that decision for an abuse of discretion? I have to concede probably that that's the case. And so are we under the Hinkson? So we have to say that the district court's, it's an evidentiary ruling, the district court's exclusion of Hoffman's testimony would have to be illogical, implausible, and without support in the record. Yeah, I would suggest that. Or the judge picked the wrong law. Exactly. That was my question. The judge considered his testimony and found it insufficient to establish something. I don't know what, whether it was causation or defect. So it's a strange case in the sense that the judge says he's not really excluding the testimony. He's considering it and finding it not enough. I know he says he's excluding it, but that's why Judge Acutis questioned it. So why was the district court's exclusion? The district court excluded Hoffman's testimony because his specific theory was that the release handle hit the back of the front seat, and he said you have no evidence whatsoever. There's no, you're making assumptions, but you have no statistics. You have no comparables. You have nothing. And so, therefore, it's not reliable. It's very similar to what the Supreme Court said in Joyner where they said you've got rat studies, but the district court could reasonably say that's not enough to show that the PCBs caused the lung cancer. So why wasn't the district court's exclusion not an abuse of discretion given Mr. Hoffman's specific theory of causation? Well, first of all, let me say that I think it's pretty clear, at least the way I read the decision of the district court, that it was causation that the district court found was lacking in terms of proof. So I can start with that premise and then I'll answer it. I think so, too. I mean, you don't read the district judge. But if the district judge excluded Mr. Hoffman's testimony, is there any other testimony of that defect? Let me answer Judge Akuda's question, if I may, because I think it touches on that. How this case differs is that in this case, Hoffman, when you tease out his opinion and not just focus on one or two sentences from the middle of his report, for example, what he is saying is that the car seat is defective because it has a latching handle that's not protected against the danger of being inadvertently actuated in an accident. You know, that's more helpful to you. But when I actually read the reports in his deposition testimony, I mean, he says that over and over again, it must have hit the back of the seat. I'm almost certain. Could it be something else? Well, possibly. But I'm almost certain what happened was it hit the back of the seat. Well, here's my response to that in this case. He said, I'm as certain as I can be. Right. And maybe that means I'm very certain or maybe it means we don't know what happened, because that's certainly what the other experts say. And essentially what he says is we can't know, we don't know. And especially Mr. Smith. Well, no expert will say that they do know. I mean, I've worked with experts. They will never say 100%. But he went very, very far. And the other two experts said, I'm not going to opine on this. I'll defer to Mr. Hoffman. They defer to Mr. Hoffman specifically with regard to his opinion that the most likely, most likely cause was striking the back of the front seat. Didn't the other experts also say, one of them at least, I can exclude the mother or the woman being the person who hit the seat because she had seatbelt injuries on her, and therefore she couldn't have gone into the back. And therefore it must have been some, if it wasn't the seat, it must have been something loose in the car. The reason I'm asking this is because I can find no basis on which the judge could exclude Mr. Hoffman's testimony that this was a defective seat because it had an exposed release. I agree with that absolutely. Whether or not he could have excluded his testimony on the cause of the accident, I want to take up separately. But he was an expert. He had qualifications. His position was that this exposed latch poses a danger. Right. He said, he says, I think the danger that it posed was it hitting the seat, and the seat hit it. The other two people say, I'm not so sure it hit the seat, but it does have a danger because other stuff can hit it, and the only explanation given by the other side, the woman, is not possible in our view. Why together, even if you exclude the rest of Mr. Hoffman's testimony about causation, why doesn't that get you to a jury? Obviously we think that does get you to a jury. I thought it was you had agreed below that you needed experts to show causation and that this was not raised in your response to the summary judgment. So you need some expert opinion on causation, right? Well, answering the first part of that question is that even Flo asserted that expert testimony was necessary, and that wasn't disputed in the opposition to summary judgment. And that made sense because the plaintiffs were putting forth the testimony of their experts. In fact, you didn't issue any other evidence on causation, did you, other than the expert testimony? Other than Mr. Hoffman's testimony. Well, first of all, let's go back to Rule 702 and keep in mind that the experts don't just give opinions. They also help the jury or the trier of fact understand the evidence so that the court or the jury can make the decisions about causation, and that's an example. No, but your summary judgment standard, and you've got to come up with some evidence of defect in causation. Right. Injury is not disputed. I think you need. Your only evidence of what? Let me just ask the question. Okay, go ahead. Sorry. Your only evidence of causation was the expert testimony of the three experts, correct? Did you submit any other evidence? No. All the evidence, I'm pretty sure, and I could be wrong about some things, but all of the evidence was interpreted by the experts and came in through the experts. So all the photographs and examinations. So if we can't find causation in the testimony of the three experts, and I mean affidavits, depositions, et cetera, then it's not there. I think that's true. But the important thing is that the experts don't have to give their final opinion on every aspect of it. Some of it can be pretty substantial. Let me ask you another question that follows up on what Judge Hurwitz was saying, and you'll have to forgive me because I spent a great deal of time for my sins in California Superior Court. Is it your position that the Nevada substantive law, a product defect, includes the Barker versus Lull engineering concept that an unpredictable and unexpected malfunction of a consumer good creates sufficient evidence of causation? When there's a defect? Yes. The substantive law of Nevada applies to that part of the question. And does Nevada law have that holding? And if so, what case? Oh, well, you know, there's the whole string of gun lock cases, including one I argued to the Supreme Court. Are any of them in your brief? No, we didn't discuss that because we're not trying to establish that those cases go to Nevada, that you can't just show that there was injury and that establishes negligence. But that's not what we're trying to do here, or defect, in this case. You show there was a defect and it acted in an unexpected way that a consumer would not expect and therefore caused injury. Is that not sufficient under Barker versus Lull's second prong? Yeah, honestly, Your Honor, I'm not familiar with that case that you're talking about, so I apologize. Oh, okay. Yeah. I don't think we talked about it. I'm sure I'm familiar with it, but not by name. I thought it was cited in Periano. Yeah, that's what I did, too. So the question is, to relate it to your case, let's assume you have a consumer product that comes loose during rollover accidents. Well, I talk about it. Is that enough? Well, I talk about it in my case. You argued that. And I talked about it in the context of the use of circumstantial evidence to prove defect or negligence. And there are cases, for example, if the airbag goes off in the car at low speeds, you don't need an expert to say that that is a defective product. Some things are so obvious. If the jury can say whatever that thing is supposed to do, it's not supposed to do that as a matter of common sense, then that's enough. I mean, that makes sense to me, but that didn't seem to be the theory of defense that you had or the theory of your case. It's not the whole, if I may, Your Honor. I mean, I didn't see even that argument. It was the Hoffman theory of the release lever hit the back of the front seat was the theory of the case. Well, the theory of the case is that something hit the release lever and that a car seat should not function that way. Here's the difference. We're going to use circumstantial evidence to fill in the gaps from what the experts said. That's okay. And I think that's what those cases talk about, not for the whole case here, but for part of it. But the thing is that lever. Is that your theory of the case? I thought I read your brief just saying your theory of the case was that it might have hit the car seat. That's what Hoffman thought. Or something else might have hit it, but whatever hit it caused the accident and had the defect not been present, the accident wouldn't have occurred. No, absolutely. If something hit it, we don't have to prove exactly what hit it. That's our theory of the case. So when Judge Ikuda asks if that's your theory of the case, I don't think it is, but I want to know. Is it your theory of the case? Our theory of the case, yeah. That was the theory of your brief to us. It wasn't the theory of your case because the evidence submitted was these expert reports, which didn't raise that theory. Well, I think they do raise that theory. Well, I know you took language out of Hoffman's testimony, but when you read the testimony, I mean, it was pretty clear that his theory was that it hit the back of the front seat. I mean, that was what the district court was focusing on. Your theory is that, or Hoffman's theory is that it hit the back of the front seat, and he has no evidence to show that, so his evidence, his expert report is out. And then the question is, you know, Smith and the other guy, his name I've forgotten. Well, why don't we take out the theory? Let's assume that's the theory. Is there evidence to show that it hit the back of the front seat? I thought Hoffman testified that he looked at photographs of the front seat and saw damage to the back of it and looked at photographs of the front seat. He did that. That's what he says. And then he concluded that it had hit the back of the front seat. So the carrier handle had hit the back. Something had hit the back of the front seat. No, he says that it was the release latch or handle. The carrier handle. I mean, he says, I assume the release handle hit it. Well, at some point he's very clear that he's talking about the mechanism that releases the seat. I didn't see that. Where is that? This case is different because it's not like we're saying that there was a defect because the car seat didn't operate the way it's supposed to in terms of the release. The release handle did exactly what it's supposed to do. It was just improperly placed in your view. Right, and protected. I mean, it worked. It did exactly what it's supposed to do, which is if something hits it, presses it, activates it, it releases the seat. The problem is it's not supposed to do that in a rollover. I'm going to reserve the rest of my time if I may. There's a carrier handle. The release is up here. May it please the Court. Chuck Clay on behalf of the athlete, Ethan Flo. I agree, first of all, that abuse of discretion standard would apply to the evidentiary decisions. It's a strange abuse of discretion standard. The judge isn't saying I'm not going to pay any attention to what Mr. Hoffman said because he doesn't have the necessary qualifications or whatever. He said let me run through his evidence and show you why it's not persuasive to me. Under those circumstances, why is it an abuse of discretion standard? I think what he did was apply the rule 702 and the Daubert analysis. If he did, I would suggest that he's flat wrong, and here's why. You can apply the Daubert analysis when the methodology of the expert is not scientific. I'm paraphrasing it. Here, the methodology of Mr. Hoffman was very traditional. He looked at photographs. He used his own expertise as far as physical movements. He used his knowledge about materials, and he used his observation that the handle had been torn loose by force. So what about Mr. Hoffman's methodology? If you're really relying on 702, you must tell me what bizarre methodology did Dr. Hoffman use in coming to his conclusions. Your Honor, the methodology he used didn't support the opinions and conclusions. That's a matter for the jury to conclude. On the 702 motion, the question is, we're not going to allow the jury to even hear the opinion of Mr. Hoffman because his methodology is so bizarre. It's junk science. What was the junk science that Dr. Hoffman or Mr. Hoffman used? He couldn't find any data to support any opinion. It was Hoffman on Hoffman. He didn't have any data. He looked at the photographs. He said, here is some deformation of a passenger front seat. Here is a handle which loosens the car seat torn loose by force. That's not data. Well, first of all, he retracted ultimately when he was questioned, and I think Judge Akuta maybe recalls some of his exact testimony. He did talk about the carry handle, not the release handle, making the deformation in the front seat. Well, he said, if you take a look at the carry handle, if it makes a deformation in the front seat, the release handle is not far behind. Right, but he never showed that. And then he said, I'm as certain as I can be that the release handle was released by touching the front seat. If he says that based on seeing that the carry handle must have hit it and deformed it significantly and the other handle is not far behind, what data does he need? So the 702 says, since everybody gets to ask you a question before you can answer, that the testimony has to be based on sufficient facts or data. So the question here is, the district court thought the testimony was not based on sufficient facts and data. He said it's not based on any facts or data at all. So now you can address all three questions. What's sufficient and what was wrong with the methodology? Okay. One by one, this indention, which he clearly focused on to come up with an almost certainty about his opinion, was challenged and he completely retracted from that in his sworn deposition testimony. And he did admit that that was just an assumption. He admitted he didn't know how the seat moved in this accident. So how can you know what would have released the handle? Well, he phrased his conclusion in different ways. Sometimes he was more certain. Sometimes he was less certain. Right? Now, who should decide whether that decision was right or wrong? Twelve people sitting over there. Well, I think the threshold inquiry was whether it's founded in science or not. Can we separate his conclusions for a second? I think there's two issues in this case in my view. One is defect and the other one is causation. Is there any basis under which to reject Hoffman's opinion that this was a defectively designed seat because the release handle was exposed and therefore subject to forces during an ordinary rollover accident? I think there's a basis whether that was a focus of the district court. I'm trying to read the district court's decision. I think he seems to assume this was a defective seat, that Hoffman's testimony about defect ought to come in even though he says his testimony was inadmissible. So I guess my question is why should his testimony about the defective design be inadmissible? I read his testimony. He has qualifications. He says what happens in rollover accidents is that things come back and touch the seat. And if they do and the release handle is exposed and it could be done very differently, the seat will release and the child will be ejected. That seems to me to be classic defective design testimony. What's wrong with it? Why should you – how can a judge exclude that testimony? I want to turn to causation. Sure. Well, there was no peer-reviewed literature supporting that. There were no tests that support that. He couldn't point to. He looked at a random sampling of every test that this seat – well, he looked at a random sampling. He didn't look at every test that was conducted on this seat. He couldn't find one test where what he espouses as theory ever came to fruition. And the courts looked to that in analyzing underdogment. He looked at the tests done by your manufacturer and in 50 percent of the cases the seat came loose. That's incorrect. That's not correct, Your Honor. What's wrong about it? He said in 50 percent of the cases he felt that there would be contact with the front seat. Based on tests done by – That was led in crash studies that in 50 percent of the cases the seat hit the front seat, but not that it was released. Is that correct? Correct. It never released one time. So that's clouding the issue. The issue is whether the release handle is subject to an inadvertent actuation, not whether a seat can make contact with another object inside the interior of the vehicle, particularly in a four-wheel drive. Well, isn't it clear in this case that the release handle was subject to an inadvertent actuation? At least they had evidence because their – one of their experts said, doing sort of differential diagnosis, it wasn't the woman flying through the car because she had her seat belt on. He says, I found seat belt injuries on her. It is my opinion that she wasn't flying through the car to cause this, and therefore it must have been caused, the other experts say. You know, we would defer to Mr. Hoffman, but we're not so sure he's right, but something must have hit it. Isn't that what they say?  If you could, in answering Judge Hurwitz's question, explain what they did opine on, because when I read it, they were very careful and said, this is outside my area of expertise. So help me with that. Absolutely. And when I questioned them, because I questioned – they're all mechanical engineers, so I asked them some of the same overlapping questions. When I got to Smith, in fact, counsel objected to me asking if he had an opinion about what caused the release, and they said, we're not designating him for that. We're talking – Smith will address the biomechanical field and not necessarily the design and function of why it released, and that was the second volume, excerpt of the record, 252. You do – I take it with Mr. – I'm trying to find out one expert from the other. Mr. Smith does opine that there's no way that the woman flying through the car could have caused the release. I'm looking at 3ER409. There is no way she can apply a significant load compared to what's been tested to, and plus the failure of the mechanism is not shearing off the base. It's coming unlatched. So his opinion is that she did not cause the seat to come loose. And if Mr. Smith had been proffered to address the causation of the inverted activation, then we would have challenged that opinion because that would also be unreliable because he didn't do any tests. He didn't show, you know, you can do surrogate studies. The judge didn't exclude his opinion. The judge only excluded Mr. Hoffman's opinion, right? But the judge looked at the other opinions to see whether they were deferring to Hoffman, which they clearly did, on those issues. But that doesn't, he couldn't be clearer that he doesn't, your theory of the case is that the woman in the car hit it and sheared it loose. Their theory of the case is something else must have hit the release mechanism. They proffer an expert to say, I don't know what caused it, but I know it wasn't the woman because she had her seat belt on, and also she couldn't have done the sufficient forces. Doesn't that, sort of differential diagnosis, if it wasn't the woman and something else in the car hit it because the release mechanism was exposed, doesn't that make their case? Based on what would be my question. Just because he said it, that wouldn't suffice. So Joyner says the ipsy-dixit of the expert is not enough. The question is if Hoffman's evidence is out, we have Stevens and Smith, and there's also sort of a race-ipsy-loquitur piece to this, which is that a car seat is designed not to let the baby go flying out the window. There was at least some evidence that the release mechanism was inadvertently activated, and can't you say that's got to be defective, the baby going flying out the window. That's not supposed to be what happens. So if I took this sort of race-ipsy-loquitur piece and the Smith-Stevens expertise, is there enough to create a genuine issue of material fact? If race-ipsy could apply to this, perhaps so. And does race-ipsy apply here? Why not? No, Your Honor, because it's not the type of case that, you know, but for there being some defect, this happens. Under Nevada substantive law, does race-ipsy-loquitur apply in a product defect case? Question one. Does it apply in a negligent design case? Question two. I have not found the application of race-ipsy to anything close to the facts. Your answer is negative as to both questions. Yes. So that if an airbag went off in the car at low speed and injured someone under Nevada law, someone would be required to come forth with evidence of negligence as opposed to just presuming it. They would also look at the facts of the case. I mean, I'm not sure. Judge Abey asked you whether or not race-ipsy applied in product defect cases in Nevada. That's a product defect case in my view. Would it apply in that circumstance? I can see how it could apply in that circumstance. So then I guess your answer to him is yes, it does apply depending on the facts of the case. My answer is yes. It is very fact-intensive. And when you have a four-role event like this, everybody on the right side died. So to presume that, you know, to the extent you had anybody. Isn't the seat coming loose in a four-role accident an unexpected result from a consumer's point of view? It depends on the accident. I mean, I can envision any number of hypothetical accidents where you would crush a car beyond any belief, and you wouldn't expect. I'm not talking about crushing. The question is it comes loose during a roll. Is that not an unexpected result from a reasonable consumer's point of view? I mean, the seat's not supposed to come loose unless you activate the handle. Isn't that right? It's the only way it's supposed to come loose. That's true. Now, if it comes loose during a roll, that means that something activated the handle. Is it not possible to have an opinion that a guard over the handle would have prevented that? You would have to look at the circumstances of each accident. Isn't that what Hoffman said? The handle should be guarded in a way to prevent any force being applied inadvertently to the handle? That's what he said, Your Honor. And I want to quote from what Stephen said, too, because I don't think I answered what he had to say on this issue. And I think it's very important in the record to ER 271. And I asked him, are you saying it's impossible that that middle occupant could not have forcibly knocked the carrier from the base? And he gave me what I believe is a very proper and scientific analysis. He said, before I attempted to do anything like you said, I would want to conduct some sort of test on the vehicle to see if it would release under those circumstances on the carrier systems. I don't have any plans or anticipation to do that. But when then he specifically said, but I don't think the middle occupant came loose in this case because she had a seat belt on. Actually, Stephen said no. Smith said yes. Okay. Hoffman said no. I'm confusing the two S's. And Smith said, strangely, the mother could hit the seat with 200 pounds of force if the mother was restrained. But if the mother is unrestrained, the dynamics, document kinematics would not allow it to hit the bottom. Let me ask you a slightly different question. It builds on one that Judge Bay asked you. Let's take this out of the context of a car seat. Let's assume it's a single driver accident and the driver has their seat belt on and the seat belt releases and the driver is thrown loose. In the absence of expert testimony, can you get that case to the jury on the fact that the seat belt failed? Consumer expectation case. And the evidence is from the consumer that I felt. The evidence is clear that the person had their seat belt on. Or somebody saw them. They had their seat belt on and they were thrown loose. Is that enough to get to the jury on whether the seat belt is defectively designed? Or defectively manufactured. Or manufactured. If the seat belt just came loose and there's – Yeah, but that's all we know. That's all we know. We don't know. Well, all we know is that this person was driving down the road, had an accident, had their seat belt on, and was thrown clear from the car. Can they get to the jury on the notion that there must have been something wrong with the seat belt, design or defect? And make it a brand-new car so we're not worried about who dealt with the stuff in the meantime. We have a brand-new car seat here, so. I suppose they could. Thank you. Thank you very much. Thank you. Thank you. Next. Next. Very quickly. Two excerpts of record, volume two, page 250. That's where John Smith is very clear in his – to ER-250. He's very clear in his opinion, to a reasonable degree of engineering certainty, that the handle was pushed, releasing it. Now, there's been talk about testing. What kind of testing do you need to do to show that the handle, the release handle, functioned exactly as it's supposed to function? When you push it, the seat gets released from the base. So on that point, I think the testing issue is a red herring. So you're saying you don't have to show causation in the sense of something hitting the release. It's enough to say it was released in the accident. I think that's – But that's enough. Absolutely. Absolutely. That's the whole case here. When you're in an accident, it's entirely foreseeable that things will go flying around and a consumer is not going to expect that a seat that is supposed to hold a baby in a car – So you didn't need any experts at all, which is sort of a change in your position. No, no, no. Because that's a race of soliquid, or you don't need any experts. I'm not saying that. I'm saying the experts are necessary, perhaps, probably necessary, very helpful in explaining certain things. Dr. Hoffman goes into his examination of the car seat and the locking mechanism to show that the locking mechanism wasn't damaged in a way that would indicate that it was forcibly removed and broken. It was actuated. The cables were pulled out of the seat. The release handle was ripped off. And that's all consistent with our theory. Unless there's any questions, that's the end of my time. Thank you very much. Thank you. Thanks to both counsel for a very interesting presentation. And we will be adjourned, but I want to adjourn today.
judges: BEA, IKUTA, HURWITZ